# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| KERRY LEWIS, | |
| Plaintiff, | |
| v. | Case No. CV-04-C-1234-S |
| BAMA MINE & MILL d/b/a DMB MINE & MILL, | |
| Defendant. | |

## Complaint

Comes now the plaintiff in the above-styled cause and says as follows:

### I.
### Jurisdiction

1. The jurisdiction of the court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(1)-(4), 28 U.S.C. §§ 2201 & 2202, 42 U.S.C. §1981. This suit is authorized and instituted pursuant to 42 U.S.C. § 1981, as amended and the Civil Rights Act of 1991. The jurisdiction of this court is invoked to secure protection of and redress deprivation of rights secured by 42 U.S.C. § 1981 as amended, by the Civil Rights Act of 1991, providing for injunctive and other relief against race discrimination and/or retaliation.

### II.
### Parties

3. Plaintiff, Kerry Lewis (hereafter referred to as "Plaintiff") is an African American,

citizen of the United States and a resident of Jefferson County, Alabama. He was employed by the defendant at its Jefferson County, Alabama location during the time of the alleged acts of discrimination.

4.     Defendant, DMB Mine & Mill, (hereafter referred to as "Defendant") is an entity subject to suit under 42 U.S.C. §1981 as amended by The Civil Rights Act of 1991. The defendant employs at least five hundred (500) persons.

### III.
### Cause of Action - 42 U. S. C. § 2000e et. seq. & 1981
### Race Discrimination, Racially Hostile Work Environment

5.     The plaintiff re-alleges and incorporates by reference paragraph 1-4 above with the same force and effect as if fully stated in specific detail herein below.

6.     The defendants discriminated on the basis of race against the plaintiff, Terry Hampton with respect to his employment contract by refusing to contract with plaintiff on terms free of bias with respect to race, in violation, of 42 U.S.C. §§1981, as amended by the Civil Rights Act of 1991.

<u>Discriminatory Employment History</u>

7.     On or about August 1998, plaintiff was employed by DMB Mine & Mill as a Machine Operator. Pete Winslett, Caucasian, was his supervisor. On or about June/July 2000, Robert Champion, Caucasian, was employed by the defendant. Champion began a campaign of racist propaganda to encourage plaintiff to quit his job. Plaintiff was called a variety of epithets on a daily basis after Champion's employment, most notable nigger, dumb nigger, b--ch, black motherfu---r, dead nigger. Plaintiff was threatened on a daily basis with

physical harm and death. Plaintiff was hit with buckets and other loose debris found in the plant. Plaintiff was deliberately barred from entering the company parking lot. Plaintiff reported the harassment to his supervisor on several occasions.

8.   In and around January 2001, Champion's conduct escalated and he was joined in his harassment by Kelly Martin and Jimmy (LNU). The three Caucasian men would corner plaintiff and verbally attempt to instigate a fight. On or about March 2001 Champion came into work with a .22 caliber rifle and again attempted to provoke plaintiff into a fight. Plaintiff reported the incident to Winslett and again no remedial action was taken. The harassment did not cease.

9.   On or about July 2001 the division was moved into an new facility where there was little to no supervision. Champion and Jimmy (LNU) began carrying knives to work on a daily basis. Plaintiff reported the weapons. They were informed they could only bring one knife to work. Champion and Jimmy started standing in the door with their knives in their hands as plaintiff entered the facility. Plaintiff was told by Champion if he kept coming to work he was going to be a dead nigger. On or about August 2001 Tony (LNU) quit. Plaintiff was informed by Champion that Toni was tired of working with a nigger.

10.   On or about November 29, 2001 plaintiff was at work, Champion arrived early for work and walked up to plaintiff and said "I thought I told you not to come to work" whereby he picked up a metal file and told plaintiff he would beat his black ass. Champion then shoved plaintiff backward. Winslett sent both parties home. Plaintiff filed a police report for menacing and harassment. Plaintiff was originally terminated but later switched to the day shift until an investigation of the incident occurred. Plaintiff asked why he was transferred to

the day shift and was told the only way he could go back to the night shift was to apologize to Champion.

11.   Plaintiff's criminal case continued and on or about January 2002 - April 2002 Winslett would comment to plaintiff about the case moving to the grand jury.  Plaintiff informed Winslett he wanted to be cleared in the courts so he could go back to night shift.

12.   On or about June 28 Winslett informed plaintiff he was putting him on vacation and would call him on July 8.  Winslett called on July 8, 2002 to terminate plaintiff's job.

## IV.
## Cause of Action - 42 U. S. C. § 2000e et. seq. & 1981
### Race Discrimination - Retaliation
### (Pay and other Adverse Terms, Conditions & Privileges)

13.   The plaintiff re-alleges and incorporates by reference paragraph 1-12 above with the same force and effect as if fully stated in specific detail herein below.

14.   The defendants discriminated on the basis of race against the plaintiff, Kerry Lewis with respect to his employment contract by refusing to contract with plaintiff on terms free of racial bias with respect to pay, discipline and other adverse terms, conditions and privileges of employment, in violation of in violation, of 42 U.S.C. §§1981, as amended by the Civil Rights Act of 1991.

10.   The defendant did willfully subjected plaintiff to a violation of his rights and privileges of employment by paying Caucasian employees with less time and experience more money.  The defendant further bypassed plaintiff time and time again for overtime pay when said overtime was awarded to less senior Caucasian employees. Plaintiff continuous

harassment complaints were not investigated and no remedial action was initiated. Instead the plaintiff was penalized and eventually terminated for a fight instigated by the harasser of whom plaintiff had continuously complained.

## V.
## Prayer For Relief

*Wherefore*, Premises Considered, plaintiff respectfully prays that this court assume jurisdiction of this action and after trial provide relief as follows:

1.  Issue a declaratory judgement that the employment practices, policies, procedures, conditions and customs of the defendant are violative of the rights of the plaintiff as secured by 42 U.S.C. §1981, as amended, and the Civil Rights Act of 1991.

2.  Grant the plaintiff a permanent injunction enjoining the defendant, its agents, successors, employees, attorneys and those acting in concert with the defendant and at the defendant's request from continuing to violate 42 U.S.C. §1981, as amended, and the Civil Rights Act of 1991.

3.  Enter an order requiring the defendant to make the plaintiff whole by awarding him back-pay, front-pay, nominal, compensatory and punitive damages. Plaintiff also requests any loss of work-related benefits, including but not limited to pension, healthcare, 401(k), vacation pay, holiday pay, compensatory time or any other benefit no matter how it is denoted by the defendant.

4.  Plaintiff further prays for such other and further relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney fees

and expenses incurred by this litigation.

## PLAINTIFF DEMANDS TRIAL BY STRUCK JURY

Respectfully submitted,

*Charles Brooks*
Charles I. Brooks (ASB-3904-R68C)

*Toni Braxton*
Toni J. Braxton (ASB-1068-A19T)

The Brooks Firm, P. C.
2705 Fourth Avenue South
Birmingham, AL 35233
(205) 320-0005

<u>Defendant's Address</u>
Bama Mine & Milling d/b/a DMB Mine & Mill
c/o Peter Winslett
1209 - 24th Avenue
Hueytown, AL 35023